# ALSTON&BIRD LLP

90 Park Avenue
New York, NY 10016

212-210-9400
Fax: 212-210-9444
www.alston.com

Brett D. JaffeDirect Dial: 212-210-9547Email: brett.jaffe@alston.com

September 5, 2014

**VIA ECF**

Honorable Jesse M. Furman
U.S. District Judge, S.D.N.Y.
40 Foley Square
New York, NY 10007

Re:*Atlantica Holdings, Inc., et al. v. BTA Bank JSC*, No. 13 Civ. 5790 (JMF) [rel. *Atlantica Holdings, Inc., et al. v. Sovereign Wealth Fund "Samruk-Kazyna" JSC*, No. 12 Civ. 8852 (JMF)]

Dear Judge Furman,

We are counsel to plaintiffs in the above-referenced action. We write in response to defendant BTA Bank JSC's ("BTA") letter to the Court of September 2, 2014 [Dkt. No. 59], addressing the Second Circuit's recent decision in *ParkCentral Global Hub Ltd. v. Porsche Automobile Holdings SE*, No. 11-397-CV L, --- F.3d ---, 2014 WL 3973877 (2d Cir. August 15, 2014). BTA asserts that the *ParkCentral* decision provides further support of BTA's pending motion to dismiss Plaintiffs' Amended Complaint (the "Motion") [Dkt. No. 42]. In fact, *ParkCentral* is easily distinguished and inapplicable to the facts as alleged in the Amended Complaint.

In *ParkCentral*, the Second Circuit held that Section 10(b) of the Securities Exchange Act did not apply to synthetic swap agreements between private counterparties that referenced shares of Volkswagen AG ("VW"), a German company whose securities were traded only on foreign stock exchanges. While these counterparties' gains or losses on their investments were tied to the rise and fall of the price of VW's shares on foreign exchanges, they did not purchase, sell, or have any ownership interest in VW's shares, and VW did not otherwise participate in the transactions on any level. Neither VW nor Porsche (the *ParkCentral* defendant) had any connection whatsoever to the synthetic swap agreements traded in the United States and upon which the *ParkCentral* plaintiffs predicated their claims; in fact, it is entirely conceivable that VW and Porsche did not even know of the *existence* of the security that formed the basis of the *ParkCentral* plaintiffs' claim.

In light of those facts, and because the *ParkCentral* plaintiffs' claims were based on statements made by a German company, concerning another German company, whose securities were traded solely on foreign exchanges, the Second Circuit found that "the relevant actions in this case are so predominantly German as to compel the conclusion that the complaints fail to invoke § 10(b) in a manner consistent with the presumption against extraterritoriality." *Id.* at * 15 (citing *Morrison v. Nat'l Australia Bank Ltd.*, 561 U.S. 247, 266 (2010)). Critically, the

Page 2

Court recognized that any contrary conclusion would allow parties to bring entirely foreign securities within the ambit of the federal securities laws merely by entering into a domestic swap transaction referencing those securities:

> Were this suit allowed to proceed as pleaded, it would permit the plaintiffs, *by virtue of an agreement independent from the reference securities*, to hale the European participants in the market for German stocks into U.S. courts and subject them to U.S. securities laws.

*Id.* (emphasis added). Recognizing the unique nature of the underlying swap agreements, the Second Circuit noted that "[t]he conclusion we have reached on these facts cannot, of course, be perfunctorily applied to other cases based on the perceived similarity of a few facts." *Id.* at *16.

In contrast (and as discussed in detail in Plaintiffs' memorandum of law in opposition to the Motion [Dkt. No. 56]) Plaintiffs have pled that their purchases of the Subordinated Notes issued by BTA were domestic transactions covered by Section 10(b) as required by *Morrison* and *Absolute Activist*. Significantly, the Amended Complaint alleges that Subordinated Notes were purchased not on a foreign exchange, but rather (i) in connection with the 2010 Restructuring, directly from BTA Bank and (ii) in connection with plaintiffs' secondary market purchases, in off-exchange transactions conducted entirely in the United States. *See* Am. Compl. ¶¶ 8-13; Opposition at 7-8. Moreover, BTA has expressly admitted that the Subordinated Notes – dollar-denominated securities issued by BTA and as to which BTA expressly contemplated the private resale in the United States pursuant to Rule 144A and other available exemptions – could be traded in domestic transactions of the precise type alleged in the Amended Complaint. *See* Am. Compl. ¶ 38.

Plaintiffs have sufficiently pled the existence of a domestic securities transaction as required by *Morrison* and the law of this Circuit. This conclusion is consistent with this Court's prior holding in the related *Atlantica Holdings, Inc., et al. v. Sovereign Wealth Fund "Samruk-Kazyna" JSC* action, which arose from the same set of facts and which are virtually identical to the allegations in the Amended Complaint. No. 12-cv-8852 (JMF), --- F. Supp. 2d ----, 2014 WL 917055 (S.D.N.Y. Mar. 10, 2014).[1] *ParkCentral*, based on a unique security and facts wholly distinct from those alleged in this Complaint, does nothing to change that analysis.

Respectfully submitted,

Brett D. Jaffe

cc: Counsel of record (via ECF)

---

[1] In fact, the Second Circuit recently rejected S-K Fund's petition to take an interlocutory appeal of this Court's ruling that plaintiffs sufficiently alleged a domestic transaction, even though S-K Fund appealed as of right this Court's denial of its motion to dismiss on foreign sovereign immunity grounds. *See Atlantica Holdings, Inc., et al. v. Sovereign Wealth Fund "Samruk-Kayzna" JSC*, No. 14-1608 (2d Cir. July 28, 2014) [Dkt. No. 30].